UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN CURTIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | NO.: _____ |
| LACKAWANNA COUNTY, | : | |
| WELLPATH, LLC, HASEEBUDDIN | : | |
| AHMED, M.D., NELSON | : | |
| IANNUZZI, RAE OLIVIA, JUNE | : | |
| MAHONEY, STEPHANIE | : | |
| WAYMAN, INDIA SMITH, | : | |
| KIMBERLY PETERSON, | : | |
| ALEXANDRIA GEISLER, ANGELA | : | |
| FURMAN, C.O. BURDA, C.O. | : | |
| HOUMAN, C.O. WHARTON, C.O. | : | |
| JONAS, C.O. KELLY, C.O. KOPA, | : | |
| C.O. BLOOM, C.O. LOVEN, SGT. | : | |
| DRANCHAK, SGT. MILLS, C.O. | : | |
| BURRIER, SGT. TRICHILO, C.O. | : | |
| TAVARES, C.O. WESLEY, C.O. | : | |
| POSLUSZNY, C.O. DIXON, C.O. | : | |
| MOSKWA, and C.O. JACKSON, | : | |
| | : | (JUDGE _____) |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff Ryan Curtis, by and through his attorneys, Barry H. Dyller, Caelie M. Sweigart and Dyller & Solomon, LLC, brings this action related to the deprivation of Mr. Curtis's protected rights and in support thereof, alleges as follows:

1

## JURISDICTION AND VENUE

1.      This action arises out of violations of the United States Constitution brought pursuant to 42 U.S.C. § 1983, and violations of Pennsylvania state law.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

4.      Plaintiff Ryan Curtis ("Mr. Curtis") is an adult individual domiciled in Pike County, Pennsylvania.

5.      Defendant Lackawanna County (the "County") is a municipality in Pennsylvania and owns and controls the Lackawanna County Prison ("LCP").

6.      Defendant Wellpath, LLC ("Wellpath") is a "health care provider" as such term is defined by the Medical Care Availability and Reduction of Error Act (MCARE), and is a corporation organized under the laws of the State of Delaware providing comprehensive medical care under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Tennessee.

7.      Wellpath contracted with the County to provide medical services at LCP.

2

8. At all relevant times, Wellpath held itself out as a medical provider equipped with staff skilled and competent in wound care and/or the treatment of infection.

9. At all relevant times, Wellpath acted individually and by and through its agents, servants, workers, ostensible agents, and employees.

10. At all relevant times, Wellpath employed staff members, agents, ostensible agents, and employees, who were acting within the course and scope of their employment and/or agency with Wellpath with regard to the events as described.

11. At all relevant times, the agents and employees of Wellpath acted in furtherance of the business interests of Wellpath.

12. By virtue of its role performing correctional facility medical care, the acts of Wellpath and of its employees and agents are under color of state law.

13. At all relevant times, Mr. Curtis was under the medical care, treatment, and attendance of Wellpath and/or the County, directly or through its agents, servants, ostensible agents and/or employees.

14. Mr. Curtis is asserting a state law professional liability claim against Wellpath.

15. Defendant Nelson Anthony Iannuzzi ("Nurse Iannuzzi") was at all relevant times a nurse practitioner employed by Wellpath who provided medical services at LCP.

16. Nurse Iannuzzi is a "licensed professional" who at all times relevant to

this action was licensed and practicing medicine in the Commonwealth of Pennsylvania as a Nurse Practitioner pursuant to the Professional Nursing Law, 63 P.S. §§ 211-225 and the Medical Practice Act of 1974, 63 P.S. §§ 421.3 and 421.16. Nurse Iannuzzi's medical care and treatment of Mr. Curtis was within the scope of his agency, master-servant, and/or employment relationship with Wellpath.

17.     At all relevant times, Nurse Iannuzzi was the agent, ostensible agent, servant, workman, and/or employee of Wellpath.

18.     At all material times, Nurse Iannuzzi held himself out to the public and to Mr. Curtis as possessing specialized skills in the field of family medicine, including, but not limited to, wound care and the treatment of infections.

19.     Mr. Curtis is asserting a state law professional liability claim against Nurse Iannuzzi.

20.     Defendant Haseebuddin Ahmed, M.D. ("Dr. Ahmed") was at all relevant times a medical doctor employed by Wellpath who provided medical services at LCP.

21.     At all relevant times, Dr. Ahmed was a "health care provider" as such term is defined by the Medical Care Availability and Reduction Error Act (MCARE) and was the agent, ostensible agent, servant, workman and/or employee of Wellpath. Dr. Ahmed's medical care and treatment of Mr. Curtis was within the scope of his agency, master-servant, and/or employment relationship with Wellpath.

4

22.     At all material times, Dr. Ahmed held himself out to the public and to Mr. Curtis as possessing specialized skills in the field of family medicine, including, but not limited to, wound care and the treatment of infections.

23.     Mr. Curtis is asserting a state law professional liability claim against Dr. Ahmed.

24.     Defendant Rae Oleavia, LPN/LVN ("Nurse Oleavia") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

25.     Defendant June Mahoney, LPN/LVN ("Nurse Mahoney") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

26.     Defendant Stephanie Wayman, LPN/LVN ("Nurse Wayman") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

27.     Defendant India Smith, RN ("Nurse Smith") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

28.     Defendant Kimberly Peterson, LPN/LVN ("Nurse Peterson") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

29.     Defendant Alexandria Geisler, LPN/LVN ("Nurse Geisler") was at all

relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

30.     Defendant Angela Furman, LPN/LVN ("Nurse Furman") was at all relevant times a nurse employed by Wellpath and/or the County who provided medical services at LCP.

31.     Defendant C.O. Burda was at all relevant times employed by the County as a correctional officer at LCP.

32.     Defendant C.O. Houman was at all relevant times employed by the County as a correctional officer at LCP.

33.     Defendant C.O. Wharton was at all relevant times employed by the County as a correctional officer at LCP.

34.     Defendant C.O. Jonas was at all relevant times employed by the County as a correctional officer at LCP.

35.     Defendant C.O. Kelly was at all relevant times employed by the County as a correctional officer at LCP.

36.     Defendant C.O. Kopa was at all relevant times employed by the County as a correctional officer at LCP.

37.     Defendant C.O. Bloom was at all relevant times employed by the County as a correctional officer at LCP.

38.     Defendant C.O. Loven was at all relevant times employed by the County as a correctional officer at LCP.

6

39.   Defendant Sergeant Dranchak was at all relevant times employed by the County as a sergeant at LCP.

40.   Defendant Sergeant Mills was at all relevant times employed by the County as a sergeant at LCP.

41.   Defendant C.O. Burrier was at all relevant times employed by the County as a correctional officer at LCP.

42.   Defendant Sergeant Trichilo was at all relevant times employed by the County as a sergeant at LCP.

43.   Defendant C.O. Tavares was at all relevant times employed by the County as a correctional officer at LCP.

44.   Defendant C.O. Wesley was at all relevant times employed by the County as a correctional officer at LCP.

45.   Defendant C.O. Posluszny was at all relevant times employed by the County as a correctional officer at LCP.

46.   Defendant C.O. Dixon was at all relevant times employed by the County as a correctional officer at LCP.

47.   Defendant C.O. Moskwa was at all relevant times employed by the County as a correctional officer at LCP.

48.   Defendant C.O. Jackson was at all relevant times employed by the County as a correctional officer at LCP.

## FACTUAL BACKGROUND

### Emergency Department and Commitment to
### the Lackawanna County Prison (February 11, 2022)

49.     On February 11, 2022, Mr. Curtis was arrested in Blakely, Pennsylvania on drug-related charges.

50.     At the time of his arrest, Mr. Curtis showed the arresting officers a blister on his toe that was causing him pain.

51.     Before taking Mr. Curtis to LCP for booking, the arresting officers took him to the Geisinger Community Medical Center in Scranton, Pennsylvania ("GCMC") for treatment.

52.     At the GCMC Emergency Department, Mr. Curtis presented with a blister on the second toe of his left foot.



53.     Mr. Curtis was experiencing pain, swelling, and redness in the toe with a rash spreading from the toe to the surface of his foot and purulent drainage emanating from the opening of the blister.

54.     Following an x-ray of his left foot, Mr. Curtis was treated for a suspected infection with fluid collection in the left second toe.

55.     The toe was cleaned and numbed before the blister was lanced and 3-4 cc of purulent drainage expressed.

56.     During this procedure, a deep wound culture was taken and sent to the GCMC laboratory for analysis.

57.    The blister was then packed with quarter-inch packing and the left foot wrapped with gauze and an Ace bandage.

58.    There was no need for surgical intervention at that time and Mr. Curtis was stable for discharge.

59.    Mr. Curtis's discharge diagnosis was left second toe abscess/cellulitis for which an oral antibiotic, clindamycin, was prescribed.

60.    Mr. Curtis's discharge plan of care included a follow-up appointment at the Geisinger Wound Care Center and an instruction to call GCMC Podiatry by February 14, 2022.

61.    GCMC gave Mr. Curtis's discharge papers to the arresting officers, who, upon information and belief, provided them to LCP upon the transfer of custody.

62.    Mr. Curtis's discharge papers included the following written instructions related to home/follow-up care: cover the wound with a clean/dry dressing; change the dressing if it is soaked with blood or puss; take medication as prescribed; follow up with your healthcare provider as advised; gauze packing should be removed in 1-2 days; after packing is removed, continue to clean the area until the skin opening closes; and, check the wound daily for signs of worsening infection.

63.    The discharge papers further instructed that Mr. Curtis contact a healthcare provider if any of the following occurred: increasing redness or swelling; red streaks in the skin leading away from the wound; increasing local pain or swelling;

continued pus draining from the wound 2 days after treatment; fever of 100.4 degrees or higher, and/or boil returns.

64.     After his release from GCMC on February 11, 2022, Mr. Curtis was transferred to LCP and committed to the special needs unit ("SNU") for a mandatory COVID quarantine period.

65.     Upon information and belief, at the time of his commitment to LCP, the County and/or Wellpath were in possession of Mr. Curtis's discharge instructions and prescription for clindamycin.

66.     Once in LCP, Mr. Curtis was a pre-trial detainee.

**Incarceration at LCP (February 12-19, 2022)**

67.     On or about February 12, 2022, Nurse Wayman entered into Mr. Curtis's medical file at LCP, a prescription for clindamycin as ordered by Nurse Iannuzzi.

68.     At that time, Nurse Iannuzzi did not examine or speak to Mr. Curtis, gave no orders regarding wound care, and failed to establish any plan for follow-up care as ordered by GCMC.

69.     In fact, Mr. Curtis was given no wound care supplies, such as clean gauze or antibiotic ointment, during his period of incarceration from February 12 through February 19, 2022.

70.     From his first day in LCP, February 12, 2022, through the time that he

was emergently transferred back to GCMC on February 19, 2022, the clindamycin prescription was provided to Mr. Curtis three times per day by Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman.

71.     Each time that Mr. Curtis received the medication from Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman, he reported increasing pain and redness in his left foot and that the blister on his toe was not improving with the antibiotic.

72.     On multiple occasions, Mr. Curtis removed his sock to show Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman the condition of his infected left second toe.

73.     In response to seeing the condition of Mr. Curtis's toe, Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman displayed disgusted looks and, at times, instructed that they did not want to see it again.

74.     Instead, Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman instructed Mr. Curtis to wash the wound in the sink in his cell which was unsanitary and ran only cold water.

75.     No medical care or wound care supplies were provided on any of these occasions, nor was Mr. Curtis scheduled to be examined by medical staff.

76.     Consequently, Mr. Curtis was forced to drain his infected wound

himself in his cell and wrap it in the only sock he was issued by LCP at intake.

77.    During this period, Mr. Curtis was never provided with new or clean bandages for his toe and had only the original, soiled bandage from GCMC for his use.

78.    During the first few days of his incarceration, Mr. Curtis submitted a Health Services Request stating, "Infection in toe on left foot. Needs to be re-dressed/cleaned."

79.    Mr. Curtis's wound was never properly cleaned, nor the bandages re-dressed during his period of incarceration at LCP.

80.    On or about February 17, 2022, Mr. Curtis finally received an appointment with Dr. Ahmed regarding the symptoms he was experiencing in his left second toe.

81.    After examining Mr. Curtis's red, inflamed toe and hearing about the worsening pain and drainage from the wound site, Dr. Ahmed told Mr. Curtis he was fine, handed back the saturated bandage, and sent him to his cell.

82.    Dr. Ahmed did not clean, drain, or otherwise treat Mr. Curtis's infected wound, provided no wound care or cleaning supplies, considered no alterations to the prescribed antibiotic, and failed to establish any plan for follow-up care/monitoring.

83.    Mr. Curtis submitted another Health Services Request on February 17, 2022, explaining his need for medical attention: "Infected toe on left foot. Antibiotics don't seem to be helping. Still very inflamed and painful. Difficulty sleeping. Needed

to drain it myself for relief and ability to sleep. Please help."

84.    Two days later, on February 19, 2022, without examining or speaking to Mr. Curtis, Nurse Wayman responded to that Request, "Continue with your prescribed meds."

85.    At no time during Mr. Curtis's incarceration did anyone from the medical staff at LCP follow-up with GCMC for the results of the wound culture taken on February 11, 2022, which revealed that the bacteria infecting Mr. Curtis's toe was resistant to the prescribed antibiotic, clindamycin.

86.    From his initial incarceration on February 12, 2022 through February 19, 2022, Mr. Curtis was housed in the SNU where C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sergeant Dranchak, Sergeant Mills, C.O. Burrier, Sergeant Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson were officers on duty.

87.    During that time, Mr. Curtis repeatedly asked the officers on duty, including, but not limited to, C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sergeant Dranchak, Sergeant Mills, C.O. Burrier, Sergeant Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson, to send him to medical for treatment because of the symptoms he was experiencing.

88.    Mr. Curtis also consistently requested wound care and cleaning supplies

from the SNU officers on duty, including, but not limited to, C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sergeant Dranchak, Sergeant Mills, C.O. Burrier, Sergeant Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson.

89.     Although C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sergeant Dranchak, Sergeant Mills, C.O. Burrier, Sergeant Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson knew about the state of Mr. Curtis's worsening infection and that he was being denied wound care supplies and medical treatment, none of them sent him to medical for examination until February 19, 2022.

**Transfer to GCMC and Toe Amputation**

90.     On February 19, 2022, Nurse Iannuzzi examined Mr. Curtis's left second toe.

91.     Nurse Iannuzzi's exam revealed moderate to severe swelling and edema, rash, a foul odor, purulent discharge, decreased sensation, and pain while ambulating.

92.     Nurse Iannuzzi ordered Mr. Curtis's immediate transfer to GCMC for evaluation and treatment of cellulitis with a concern for osteomyelitis.

93.     At approximately 7:30 p.m., Mr. Curtis presented to the Emergency Department at GCMC where imaging showed osteolytic changes in the left second toe that were concerning for osteomyelitis.

94.     Mr. Curtis was immediately started on IV antibiotics - vancomycin and

zosyn.

95.     At GCMC, Mr. Curtis explained that, since leaving GCMC on February 11, 2022, his wound had gotten worse, with increased swelling, pain, and redness. Mr. Curtis described the pain in his toe as feeling like it was about to burst.

96.     Visual examination revealed a purulent and actively draining wound that probed directly to the bone of the left second toe.



97.     The wound was numbed, cleaned, and an incision made to drain it.



98.     Immediately upon incision, 5cc of purulent discharge was expressed with bleeding.

99.     An additional 5cc of purulence was expressed with exploration, including chunks of purulence that were removed from the wound.

100.   GCMC made a plan for surgery to either partially or completely amputate Mr. Curtis's left second toe.

101.   On February 21, 2022, Mr. Curtis underwent a complete surgical amputation of the second toe on his left foot.



102.    Following the amputation, Mr. Curtis was suffering from significant pain which required doses of fentanyl, dilaudid, oxycodone, and percocet to control.

103.    Surgical pathology later confirmed acute osteomyelitis with draining sinus tract in the left second toe.

104.    Mr. Curtis was released from GCMC and returned to LCP on February 22, 2022.

105.    On February 24, 2022, Mr. Curtis was ultimately released from LCP on bail.

106.    Upon release from LCP, Mr. Curtis was not provided with his prescriptions, nor informed about his follow-up appointments at GCMC related to the amputation.

107.    Accordingly, on February 25, 2022, Mr. Curtis presented to the Emergency Department at GCMC for follow-up care.

108.    A few weeks later, Mr. Curtis had his sutures removed and he continued to treat with Geisinger Podiatry to monitor the healing progress of his incision site.



109.    Mr. Curtis's injuries were the direct and proximate result of the deliberate indifference and/or negligence of Defendants.

110.    As a result of the injuries he sustained due to the deliberate indifference and/or negligence of Defendants, Mr. Curtis has suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

111.    As a result of the injuries he sustained due to the deliberate indifference and/or negligence of Defendants, Mr. Curtis was required to seek medical treatment

for which medical bills were incurred, and for which a claim is made.

112.   As a result of the injuries he sustained due to the deliberate indifference and/or negligence of Defendants, Mr. Curtis was rendered sick, sore, and disabled, and sustained severe mental and physical pain and great discomfort all of which required medical care and treatment and are alleged to be permanent.

113.   As a result of the injuries he sustained due to the deliberate indifference and/or negligence of Defendants, Mr. Curtis has suffered and continues to suffer a loss of earning capacity and power for which a claim is herein made.

114.    As a result of the injuries he sustained due to the deliberate indifference and/or negligence of Defendants, Mr. Curtis has sustained and continues to sustain a loss of everyday pleasures and the enjoyments of life.

<u>COUNT ONE</u>
Denial of Medical Care
Mr. Curtis v. Dr. Ahmed, Nurse Iannuzzi, Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and Nurse Wayman
("Individual Medical Defendants")
(42 U.S.C. § 1983)

115.    Mr. Curtis repeats and realleges each and every allegation contained above as if fully repeated herein.

116.    Mr. Curtis, as an inmate and pretrial detainee in LCP, had a constitutional right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

117.   Mr. Curtis had a serious medical need at the time he was committed to

LCP from February 12, 2022 through February 19, 2022, as he was suffering from a significant wound on his left second toe with symptoms indicative of worsening infection.

118.   Although Mr. Curtis's condition was apparent and his need for medical attention was evident, Mr. Curtis was afforded virtually no medical care beyond the provision of an oral antibiotic that was ineffective.

119.   Upon his intake at LCP and in spite of knowledge that Mr. Curtis was under treatment for an infected wound, Nurse Iannuzzi did not examine him, provided no wound care supplies, such as bandages or antibiotic ointment, and failed to establish a plan of care for follow-up treatment and/or monitoring.

120.   During his incarceration, Mr. Curtis repeatedly informed Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman about pain and redness in his left second toe, as well as other signs of worsening infection, and no action was taken.

121.   By at least February 17, 2022, Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman were also aware that Mr. Curtis had been draining the wound on his own in his cell simply to relieve the pain enough to sleep. Still no medical treatment was provided.

122.   When Mr. Curtis finally saw Dr. Ahmed after days of obvious signs that the infection was worsening, again, nothing was done.

123.   Dr. Ahmed visualized an inflamed, red, painful toe that had a draining

wound and he did not even bother to clean the infection site or offer a new bandage.

124.   Similarly, when any of Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and/or Nurse Wayman saw the state of Mr. Curtis's left second toe, they reacted with disgust, but offered no medical attention or even wound care supplies.

125.   Mr. Curtis's need for medical treatment was so obvious that a lay person would easily have recognized the necessity for that treatment and the need for Mr. Curtis to return to GCMC due to the obvious signs of worsening infection.

126.   Dr. Ahmed, Nurse Mahoney, Nurse Smith, Nurse Oleavia, Nurse Peterson, Nurse Geisler, Nurse Furman, and Nurse Wayman were aware that Mr. Curtis was displaying the classic signs of increased infection in his toe and continued to do nothing other than provide the oral antibiotic which was obviously ineffective in treating his infection.

127.   At no time did any of the Individual Medical Defendants follow-up on the results of the wound culture taken at GCMC to determine whether the prescribed clindamycin was the appropriate medication.

128.   For each of these reasons, all of the Individual Medical Defendants were deliberately indifferent to Mr. Curtis's serious medical needs in violation of Mr. Curtis's rights guaranteed by the Fourteenth Amendment to the United States Constitution.

129.   As a result of the Individual Medical Defendants' violations of Mr.

Curtis's constitutional rights and their deliberate indifference to same, he suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

<u>COUNT TWO</u>
Denial of Medical Care
Mr. Curtis v. C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sgt. Dranchak, Sgt. Mills, C.O. Burrier, Sgt. Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson ("Individual Officer Defendants")
(42 U.S.C. § 1983)

130.    Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

131.    Mr. Curtis, as an inmate and pretrial detainee in LCP, had a constitutional right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

132.    Mr. Curtis had a serious medical need at the time he was committed to LCP from February 12, 2022 through February 19, 2022, as he was suffering from a significant wound on his left second toe with symptoms indicative of worsening infection.

133.    Although Mr. Curtis's condition was apparent and his need for medical attention was evident, Mr. Curtis was afforded virtually no medical care beyond the provision of an oral antibiotic that was ineffective.

134.    Mr. Curtis's need for medical treatment was so obvious that a lay person

would easily have recognized the necessity for that treatment and the need for Mr. Curtis to be examined by a medical provider.

135.    C.O. Burda, C.O. Houman, C.O. Wharton, C.O. Jonas, C.O. Kelly, C.O. Kopa, C.O. Bloom, C.O. Loven, Sergeant Dranchak, Sergeant Mills, C.O. Burrier, Sergeant Trichilo, C.O. Tavares, C.O. Wesley, C.O. Posluszny, C.O. Dixon, C.O. Moskwa, and C.O. Jackson all witnessed and were aware of Mr. Curtis's deteriorating condition and the fact that he was suffering from a significant and worsening infection, but they all did nothing.

136.    From his initial incarceration on February 12, 2022 through February 19, 2022, Mr. Curtis repeatedly asked the on-duty officers in the SNU, including, but not limited to, the Individual Officer Defendants, to send him to medical for treatment because of the symptoms he was experiencing.

137.    During that time, Mr. Curtis also continually requested wound care and cleaning supplies from the officers on duty in the SNU, including, but not limited to, the Individual Officer Defendants.

138.    Although the Individual Officer Defendants knew about the state of Mr. Curtis's worsening infection and that he was being denied wound care supplies and medical treatment, none of them sent him to medical for examination until February 19, 2022.

139.    For each of these reasons, all of the Individual Officer Defendants were deliberately indifferent to Mr. Curtis's serious medical needs in violation of Mr.

26

Curtis's rights guaranteed by the Fourteenth Amendment to the United States Constitution.

140.   As a result of the Individual Officer Defendants' violations of Mr. Curtis's constitutional rights and their deliberate indifference to same, he suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT THREE
Denial of Medical Care
Mr. Curtis v. the County & Wellpath
(42 U.S.C. § 1983)

141.   Mr. Curtis repeats and realleges each and every allegation contained above as if fully repeated herein.

142.   The County and Wellpath had policies, customs and/or practices that resulted in the violation of Mr. Curtis's rights under the Fourteenth Amendment.

143.   Particularly, the County and Wellpath had policies, customs and/or practices related to, *inter alia*, insufficient staffing, failing to provide adequate medical attention for inmates in immediate need of same, failing to provide necessary wound care to inmates, and failing to train employees on diagnosing and/or treating inmates in the need of emergent medical care and transfer to a hospital.

144.   The County and Wellpath also had a policy, custom and/or practice of failing to train, instruct, supervise and/or control their employees in recognizing when emergency medical care is required for inmates.

145.   Such training would have prevented worsening infection, the amputation of Mr. Curtis's left second toe, and/or the increased risk of worsening infection and amputation. The need for such training was obvious.

146.   The County and Wellpath further had a policy, custom and/or practice of keeping inmates in need of emergency medical attention at LCP without transferring those inmates to the hospital because of cost and/or staffing.

147.   The County's and Wellpath's policies, customs and/or practices were a cause of and moving force behind the violation of Mr. Curtis's Fourteenth Amendment rights.

148.   The County and Wellpath therefore violated Mr. Curtis's constitutional rights.

149.   As a result of the violation of Mr. Curtis's constitutional rights, he suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT FOUR
Negligence (Vicarious)
Mr. Curtis v. Wellpath and Nurse Iannuzzi
(State Law)

150.   Mr. Curtis repeats and realleges each and every allegation made above as if fully repeated herein.

151.    The negligent and careless acts and omissions of Wellpath, by and through its nurse, Nurse Iannuzzi, as agent, ostensible agent, employee and/or workman of Wellpath consisted of the following:

      a. Failing to properly evaluate and assess Mr. Curtis who presented to LCP with an active wound infection on his left second toe;

      b. Failing to properly monitor the effectiveness of the clindamycin as ordered for Mr. Curtis upon his intake at LCP;

      c. Failing to follow-up on the results of the wound culture that was taken on February 11, 2022 and sent for analysis;

      d. Failing to develop a plan of follow-up care for Mr. Curtis to remove the wound packing, clean and redress the wound, and monitor the wound site;

      e. Failing to order or otherwise make available to Mr. Curtis wound care supplies; and,

      f. Failing to provide and/or schedule appropriate follow-up care to assess the status of the infection and the effectiveness of the prescribed medication.

152.    As a result of the negligence and carelessness of Nurse Iannuzzi, Mr. Curtis suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT FIVE
Negligence (Vicarious)
Mr. Curtis v. Wellpath and Dr. Ahmed
(State Law)

153.   Mr. Curtis repeats and realleges each and every allegation made above as if fully repeated herein.

154.   The negligent and careless acts and omissions of Wellpath, by and through its physician, Dr. Ahmed, as agent, servant, ostensible agent and/or employee of Wellpath, consisted of the following:

   a.   Failing to properly evaluate and assess Mr. Curtis who presented to LCP with an active wound infection on his left second toe and was exhibiting signs of worsening infection;

   b.   Failing to identify the signs and symptoms of Mr. Curtis's worsening infection, including, but not limited to, pain in the toe, redness, swelling, and drainage;

   c.   Failing to follow-up on the results of the wound culture that was taken on February 11, 2022 and sent for analysis;

   d.   Failing to properly evaluate and consider modifications to Mr. Curtis's medication when his symptoms indicated that the oral antibiotic initially prescribed was ineffective;

   e.   Failing to appropriately clean and dress the wound on Mr. Curtis's left second toe;

    f.  Failing to order or otherwise make available to Mr. Curtis wound care supplies; and,

    g.  Failing to provide, and/or refer Mr. Curtis, for further assessment of the wound site and the effectiveness of the prescribed medication.

155.  As a result of the negligence and carelessness of Dr. Ahmed, Mr. Curtis suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT SIX
Negligence (Vicarious)
Mr. Curtis v. Wellpath
(State Law)

156.  Mr. Curtis repeats and realleges each and every allegation made above as if fully repeated herein.

157.  The negligent and careless acts and omissions of Wellpath, by and through Nurses Mahoney, Smith, Oleavia, Peterson, Geisler, Furman, and Wayman, as agents, ostensible agents, employees and/or workmen of Wellpath consisted of the following:

    a.  Failing to properly evaluate and assess Mr. Curtis who presented to LCP with an active wound infection on his left second toe and was exhibiting signs of worsening infection;

b. Failing to identify the signs and symptoms of Mr. Curtis's worsening infection, including, but not limited to, pain in the toe, redness, swelling, and drainage;

c. Failing to appropriately clean and dress the wound on Mr. Curtis's left second toe;

d. Failing to order or otherwise make available to Mr. Curtis wound care supplies; and,

e. Failing to refer Mr. Curtis to the LCP medical unit for further evaluation of his left second toe infection.

158.    As a result of the negligence and carelessness of Nurses Mahoney, Smith, Oleavia, Peterson, Geisler, Furman, and Wayman, Mr. Curtis suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT SEVEN
Negligence
Mr. Curtis v. Nurse Iannuzzi
(State Law)

159.     Mr. Curtis repeats and realleges each and every allegation made above as if fully repeated herein.

160.    The negligent and careless acts and omissions of Nurse Iannuzzi consisted of the following:

a. Failing to properly evaluate and assess Mr. Curtis who presented to LCP with an active wound infection on his left second toe;

b. Failing to properly monitor the effectiveness of the clindamycin as ordered for Mr. Curtis upon his intake at LCP;

c. Failing to follow-up on the results of the wound culture that was taken on February 11, 2022 and sent for analysis;

d. Failing to develop a plan of follow-up care for Mr. Curtis to remove the wound packing, clean and redress the wound, and monitor the wound site;

e. Failing to order or otherwise make available to Mr. Curtis wound care supplies; and,

f. Failing to provide and/or schedule appropriate follow-up care to assess the status of the infection and the effectiveness of the prescribed medication.

161.   As a result of the negligence and carelessness of Nurse Iannuzzi, Mr. Curtis suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

COUNT EIGHT
Negligence
Mr. Curtis v. Dr. Ahmed

162.   Mr. Curtis repeats and realleges each and every allegation made above

as if fully repeated herein.

163.    The negligent and careless acts and omissions of Dr. Ahmed consisted of the following:

     a.  Failing to properly evaluate and assess Mr. Curtis who presented to LCP with an active wound infection on his left second toe and was exhibiting signs of worsening infection;

     b.  Failing to identify the signs and symptoms of Mr. Curtis's worsening infection, including, but not limited to, pain in the toe, redness, swelling, and drainage;

     c.  Failing to follow-up on the results of the wound culture that was taken on February 11, 2022 and sent for analysis;

     d.  Failing to properly evaluate and consider modifications to Mr. Curtis's medication when his symptoms indicated that the oral antibiotic initially prescribed was ineffective;

     e.  Failing to appropriately clean and dress the wound on Mr. Curtis's left second toe;

     f.  Failing to order or otherwise make available to Mr. Curtis wound care supplies; and,

     g.  Failing to provide and/or refer Mr. Curtis for further assessment of the wound site and the effectiveness of the prescribed medication.

164.   As a result of the negligence and carelessness of Dr. Ahmed, Mr. Curtis suffered extreme pain and emotional distress; worsening infection; the complete amputation of his left second toe; and/or an increased risk of worsening infection and amputation.

WHEREFORE, Plaintiff demands judgment as follows:

A. As to Counts One and Two, an amount to be determined at trial, including

   punitive damages, plus interest;

B. As to Counts Three, Four, Five, Six, Seven, and Eight, an amount to be

   determined at trial plus interest;

C. For Plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

D. For the costs and disbursements incurred in this action; and

E. For such other and further relief as the Court deems just and proper.

                                    DYLLER & SOLOMON, LLC

                                    /s/ Caelie M. Sweigart
                                    _____
                                    Barry H. Dyller, Esq.
                                    No. 65084
                                    Caelie M. Sweigart, Esq.
                                    No. 308990
                                    Attorneys for Plaintiff
                                    88 North Franklin Street
                                    Wilkes-Barre, PA  18701
                                    (570) 829-4860
                                    barry@dyllersolomon.com
                                    caelie@dyllersolomon.com

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Date: December 18, 2023

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RYAN CURTIS,                          :
                                      :
              Plaintiff,              :
                                      :       JURY TRIAL DEMANDED
       v.                             :
                                      :       NO.: _____
LACKAWANNA COUNTY,                    :
WELLPATH, LLC, HASEEBUDDIN            :
AHMED, M.D., NELSON                   :
IANNUZZI, RAE OLIVIA, JUNE            :
MAHONEY, STEPHANIE                    :
WAYMAN, INDIA SMITH,                  :
KIMBERLY PETERSON,                    :
ALEXANDRIA GEISLER, ANGELA            :
FURMAN, C.O. BURDA, C.O.              :
HOUMAN, C.O. WHARTON, C.O.            :
JONAS, C.O. KELLY, C.O. KOPA,         :
C.O. BLOOM, C.O. LOVEN, SGT.          :
DRANCHAK, SGT. MILLS, C.O.            :
BURRIER, SGT. TRICHILO, C.O.          :
TAVARES, C.O. WESLEY, C.O.            :
POSLUSZNY, C.O. DIXON, C.O.           :
MOSKWA, and C.O. JACKSON,             :
                                      :       (JUDGE _____)
                                      :
              Defendants.             :


## **<u>CERTIFICATE OF MERIT PURSUANT TO Pa.R.C.P. 1042.3</u>**

Certificate of Merit as to Wellpath, LLC

I, Caelie M. Sweigart, Esquire, certify that an appropriate licensed Professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this Defendant is responsible in the treatment, practice or work that is subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Respectfully submitted,

DYLLER & SOLOMON, LLC

/s/ Caelie M. Sweigart

_____

Caelie M. Sweigart, Esq.
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN CURTIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | NO.: _____ |
| LACKAWANNA COUNTY, | : | |
| WELLPATH, LLC, HASEEBUDDIN | : | |
| AHMED, M.D., NELSON | : | |
| IANNUZZI, RAE OLIVIA, JUNE | : | |
| MAHONEY, STEPHANIE | : | |
| WAYMAN, INDIA SMITH, | : | |
| KIMBERLY PETERSON, | : | |
| ALEXANDRIA GEISLER, ANGELA | : | |
| FURMAN, C.O. BURDA, C.O. | : | |
| HOUMAN, C.O. WHARTON, C.O. | : | |
| JONAS, C.O. KELLY, C.O. KOPA, | : | |
| C.O. BLOOM, C.O. LOVEN, SGT. | : | |
| DRANCHAK, SGT. MILLS, C.O. | : | |
| BURRIER, SGT. TRICHILO, C.O. | : | |
| TAVARES, C.O. WESLEY, C.O. | : | |
| POSLUSZNY, C.O. DIXON, C.O. | : | |
| MOSKWA, and C.O. JACKSON, | : | |
| | : | (JUDGE _____) |
| | : | |
| Defendants. | : | |

## **CERTIFICATE OF MERIT PURSUANT TO PA. R.CP. 1042.3**

Certificate of Merit as to Haseebuddin Ahmed, M.D.

I, Caelie M. Sweigart, Esquire, certify that an appropriate licensed Professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the Defendant in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Respectfully submitted,

DYLLER & SOLOMON, LLC

/s/ Caelie M. Sweigart

_____

Caelie M. Sweigart, Esq.
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RYAN CURTIS,                    :
                                  :
          Plaintiff,         :
                                  :     JURY TRIAL DEMANDED
       v.                  :
                                  :    NO.: _____
LACKAWANNA COUNTY,    :
WELLPATH, LLC, HASEEBUDDIN :
AHMED, M.D., NELSON      :
IANNUZZI, RAE OLIVIA, JUNE  :
MAHONEY, STEPHANIE       :
WAYMAN, INDIA SMITH,     :
KIMBERLY PETERSON,       :
ALEXANDRIA GEISLER, ANGELA :
FURMAN, C.O. BURDA, C.O.    :
HOUMAN, C.O. WHARTON, C.O. :
JONAS, C.O. KELLY, C.O. KOPA, :
C.O. BLOOM, C.O. LOVEN, SGT. :
DRANCHAK, SGT. MILLS, C.O.  :
BURRIER, SGT. TRICHILO, C.O.  :
TAVARES, C.O. WESLEY, C.O.   :
POSLUSZNY, C.O. DIXON, C.O.  :
MOSKWA, and C.O. JACKSON,  :
                                  :     (JUDGE _____)
                                  :
          Defendants.     :

## **CERTIFICATE OF MERIT PURSUANT TO PA. R.CP. 1042.3**

Certificate of Merit as to Nelson Anthony Iannuzzi

I, Caelie M. Sweigart, Esquire, certify that an appropriate licensed Professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the Defendant in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Respectfully submitted,

DYLLER & SOLOMON, LLC

/s/ Caelie M. Sweigart

_____

Caelie M. Sweigart, Esq.
Attorney for Plaintiff